| | |
|---|---|
| 1 | Adam J Schwartz (SBN 251831) |
| 2 | E-Serivce: adam@ajschwartzlaw.com<br>ADAM J SCHWARTZ, ATTORNEY AT LAW |
| 3 | 9465 Wilshire Blvd., Suite 300 |
| 4 | Beverly Hills, CA 90212<br>(323) 455-4016 |
| 5 | |
| 6 | [Additional counsel appear on signature page] |
| 7 | *Attorney for Plaintiff and the Proposed Class* |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT CLOUGH, II, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HIGHWAY AUTOMOTIVE PROS LLC D/B/A HIGHWAY AUTO PROTECTION AND CARGUARD ADMINISTRATION, INC.,<br><br>Defendants. | Case No. 8:23-cv-00107<br><br>**COMPLAINT FOR INJUNCTION AND DAMAGES**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Robert Clough by his undersigned counsel, for this class action complaint against Defendant Highway Automotive Pros LLC d/b/a Highway Auto Protection and Carguard Administration, Inc. ("Defendants") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

- 1 -
COMPL.
*Clough v. Highway Automotive Pros LLC, et. al.*

## I. INTRODUCTION

1. <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the

remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant Highway Automotive Pros LLC d/b/a Highway Auto Protection and Carguard Administration, Inc. for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") because Highway Automotive Pros LLC made telemarketing calls to numbers on the National Do Not Call Registry promoting the services of Carguard Administration, Inc.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.   PARTIES

5. Plaintiff Clough is an individual.

6. Defendant Highway Automotive Pros LLC d/b/a Highway Auto Protection is a Wyoming corporation with its principal place of business in this District.

7. Carguard Administration, Inc. is a Kansas corporation that does business in this District.

## III.   JURISDICTION AND VENUE

8. <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012).

9. Personal Jurisdiction: This Court has personal jurisdiction over Defendant Highway Automotive Pros LLC d/b/a Highway Auto Protection because they are located in this District. This Court has personal jurisdiction over Carguard Administration, Inc. because they worked with Highway Automotive Pros LLC d/b/a Highway Auto Protection on this marketing campaign in this District. Moreover, Carguard Administrations, Inc. offers vehicle protection services in this District.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred from this District.

## IV.   FACTS

**A.   The Enactment of the TCPA and its Regulations**

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on

whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     Defendant's Unsolicited Telemarketing to Plaintiff**

16. Plaintiff Clough is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Mr. Clough's telephone number, (603)-421-XXXX has been on the National Do Not Call Registry since 2019.

18. The number is not associated with a business.

19. Mr. Clough uses the number for personal, residential, and household reasons.

20. Plaintiff never consented to receive telemarketing calls from the Defendants.

21. Despite this, the Plaintiff received multiple unsolicited telemarketing calls from Highway Auto Protection promoting the services of CarGuard on, at least, October 3, 4, and 5, 2022.

22. All of the call came from a "spoofed" area code and local exchange of (603) 441-XXXX.

23. This number was used because Highway Auto Protection uses local Caller ID numbers in the hopes that this will cause the call recipients to answer its telemarketing calls.

24. The telemarketing calls all followed a similar script.

25. The caller identified that they were trying to sell an extended warranty plan.

26. The caller identified that a third party would administer this plan.

27. The caller attempted to sell the Plaintiff CarGuard vehicle warranty services.

28.	The Plaintiff then received a proposed service contract from CarGuard as a result of the call on October 5, 2022.

29.	The service contract also confirmed that the seller of the CarGuard policy was the Defendant.

30.	The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for CarGuard's services.

31.	The calls therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

### V.	CARGUARD'S LIABILITY FOR THE CALLING CONDUCT

32.	For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

33.	On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

34.	In that ruling, the FCC instructed that sellers such as CarGuard may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

35. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

36. Highway Auto Protection was contractually required to promote CarGuard products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

37. In fact, CarGuard admits that it can't help the called consumer until the consumer finds out the name of the company CarGuard is working with:

> We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of seller, please e-mail it to *****************, and we will contact the seller and ask them to stop calling this customer.

*See* https://www.bbb.org/us/ks/leawood/profile/auto-service-contract-companies/carguard-administration-inc-0674-1000006173/customer-reviews (Last Visited January 6, 2023)

38. CarGuard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts.

39. CarGuard derived a benefit from its interaction with the Plaintiff by the issuance of a policy.

40. Moreover, CarGuard maintained interim control over Highway Auto Protection actions.

41. For example, CarGuard had absolute control over whether, and under what circumstances, it would accept a customer.

42. Furthermore, CarGuard had day-to-day control over Highway Auto Protection actions, including the ability to prohibit it from using telemarketing to contact potential customers of CarGuard.

43. CarGuard also gave interim instructions to Highway Auto Protection by providing the volume of calling and leads it would purchase.

44. CarGuard gave further interim instructions to Highway Auto Protection by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

45. CarGuard has previously received complaints regarding the telemarketing conduct of its third-party vendors.

46. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## VI. CLASS ACTION ALLEGATIONS

47. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **<u>National Do Not Call Registry Class</u>**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Highway Auto Protection for the benefit of CarGuard, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

48. <u>Excluded</u> from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

49. The Class, as defined above, is identifiable through telephone records and telephone <u>number databases.</u>

50. <u>The potential members of the Class likely number at least in the hundreds because of the en masse nature of telemarketing calls.</u>

51. <u>Individual joinder of these persons is impracticable.</u>

52. <u>Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.</u>

53. <u>Plaintiff is</u> a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

54. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance,

waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

55. This class action complaint seeks injunctive relief and money damages.

56. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

    a. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    b. whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

    c. whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

57. Plaintiff's claims are typical of the claims of the Class.

58. Plaintiff's claims, like the claims of Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

59. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

60. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method

for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

61. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

62. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

63. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

64.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

65.     Defendants' violations were negligent, willful, or knowing.

66.     As a result of Defendants', and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

67.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E.     An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

F.     An award to Plaintiff and the Class of damages, as allowed by law; and

G.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VII.     DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## VIII.     SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.

RESPECTFULLY SUBMITTED AND DATED this 18th day of January, 2023.

By: ADAM J SCHWARTZ, ATTORNEY AT LAW

*/s/ Adam J Schwartz*

Anthony I. Paronich, *Pro Hac Vice Forthcoming*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorneys for Plaintiff and the Proposed Class*