UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT CLOUGH, II, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HIGHWAY AUTOMOTIVE PROS LLC D/B/A HIGHWAY AUTO PROTECTION and CARGUARD ADMINISTRATION, INC.,<br><br>Defendants. | Case No.: SACV 23-00107-CJC (JDEx)<br><br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) [Dkt. 23]** |

I. **INTRODUCTION**

On January 18, 2023, Plaintiff Robert Clough II filed this putative class action against Defendants Highway Automotive Pros, LLC, doing business as Highway Auto Protection, and CarGuard Administration, Inc., for allegedly violating the Telephone

Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.  (*See* Dkt. 1 [Complaint, hereinafter "Compl."].)  Now before the Court is CarGuard's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing.  (*See* Dkt. 23 [Defendant CarGuard Administration, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), hereinafter "Mot."].)  For the following reasons, the motion is **DENIED**.[1]

## II.   BACKGROUND

As alleged in the complaint, Clough has listed his telephone number on the National Do-Not-Call Registry since 2019.  (*See* Compl. ¶ 17.)  The number was not associated with a business and was used for personal, residential, and household reasons.  (*See id.* ¶¶ 18–19.)

On October 3, 4, and 5, 2022, however, Clough received unsolicited telephone marketing calls from Highway Auto promoting the services of CarGuard.  (*See id.* ¶ 21.)  Clough had not consented to receiving telemarketing calls from either Highway Auto or CarGuard.  (*See id.* ¶ 20.)  The caller indicated that an extended vehicle warranty plan was for sale, identified that a third party would administer the plan, and attempted to sell Clough CarGuard's vehicle warranty services.  (*See id.* ¶¶ 25–27.)  On October 5 of that year, Clough received a proposed service contract from CarGuard.  (*See id.* ¶ 28.)

Highway Auto was contractually obligated to promote CarGuard products on telemarketing calls in order to generate new potential customers.  (*See id.* ¶ 36.)  Further, CarGuard's responses to complaints from consumers on the Better Business Bureau website suggests that it is aware of marketing calls made to consumers on its purported behalf.  One such response states as follows:

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 5, 2023, is hereby vacated and removed from the calendar.

> We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of seller, please e-mail it to *****************, and we will contact the seller and ask them to stop calling this customer.

(*Id.* ¶ 37.) CarGuard knowingly and actively accepted business originating from telemarketing calls through the issuance of policies, and CarGuard maintained interim control over Highway Auto's actions. (*See id.* ¶ 38–44.)

With its Rule 12(b)(1) motion, CarGuard attempts to controvert some of the factual allegations of the complaint. It proffers a declaration from Trevor Smith, its founder and Chief Executive Officer, attesting that CarGuard "as a matter of policy . . . does not engage in telemarketing and does not work with companies that would attempt to sell its product using telemarketing." (Dkt. 23-1 [Declaration of Trevor Smith in Support of Defendant CarGuard Administration, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), hereinafter "Smith Decl."] ¶ 2.) Smith says that CarGuard's sellers, including Tyler Neitzel of Highway Auto, are contractually prohibited from engaging in any form of telemarketing to market CarGuard's products. (*See id.* ¶ 4; *id.* Ex. A [Direct Marketing Agreement].) Highway Auto also executed a Marketing Guidelines Attestation wherein it "stated that it does not make 'outbound calls (telemarketing or nontelemarketing) to wireless telephone numbers'" or "deliver[] prerecorded messages (telemarketing or non-telemarketing) to wireless telephone numbers," and calls from Highway Auto "are only made to wireless numbers if the called party provided prior express written consent for such calls." (*Id.* ¶ 5; *see also id.* Ex. B [Marketing Guidelines Attestation].)

Further, on April 26, 2021, CarGuard notified its sellers, including Highway Auto, that any seller found to engage in telemarketing calls would be immediately terminated.

(*See id.* ¶ 6; *id.* Ex. C [letter from Tyler Nietzel acknowledging receipt of notice].) According to Smith, CarGuard was unaware that Highway Auto was engaged in telemarketing during the timeframes at issue in the complaint, but on January 19, 2023, CarGuard became aware and accordingly sent a letter to, terminated its contract with, and stopped accepting business from Highway Auto. (*See id.* ¶¶ 7–8.)

In response, Clough has proffered a declaration attesting to his telephone number's registration on the National Do-Not-Call Registry, the purposes for which his number is used, and the circumstances of the telemarketing calls that he received. (*See* Dkt. 31-1 [Declaration of Robert Clough, II].) Clough also proffered correspondence between his counsel and representatives of CarGuard and Highway Auto. For example, he has produced a demand letter indicating, among other things, that he had received an unsolicited telemarketing call for a CarGuard policy and identifying information, such as the number displayed on the incoming call to Clough, the callback number left in a voicemail message, and the number for the policy that he received. (*See* Dkt. 31-2 [January 14, 2021, letter from Anthony Paronich to CarGuard Administration, Inc., and Highway Auto Protection].) He also produced an email from CarGuard's external counsel indicating that he had forwarded the letter to the company's legal department. (*See* Dkt. 31-3 [January 14, 2021, email thread between Anthony Paronich and Robert Shaw].) Finally, he has produced an email from Tyler Neitzel writing to counsel for Clough "on behalf of [his] company [i.e., Highway Auto] and CarGuard Administration" to "request some kind of settlement arrangement on behalf of CarGuard and Highway Auto." (Dkt. 31-4 [January 25, 2021, email from Tyler Neitzel to Anthony I. Paronich].)

### III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, federal courts are presumed to lack

jurisdiction in a particular case "unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). In deciding a motion challenging subject matter jurisdiction, the burden of proof is on the party asserting jurisdiction, and the court will presume a lack of jurisdiction until the pleader proves otherwise. *See Kokkonen*, 511 U.S. at 377.

Article III of the Constitution requires that courts adjudicate only actual cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1; *see also Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). To meet this "irreducible constitutional minimum," plaintiffs must establish that they have standing, which requires that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "A plaintiff has the burden to establish that it has standing." *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

Federal Rule of Civil Procedure 12(b)(1) provides the procedural mechanism to dismiss an action for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In resolving a facial attack, the court assumes that the allegations are true and draws all

reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).

## IV. DISCUSSION

CarGuard introduces evidence beyond the four corners of the complaint, so it brings a factual attack on subject matter jurisdiction. *See Safe Air*, 373 F.3d at 1039 (noting a "jurisdictional challenge was a factual attack where it 'relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings'" (citation omitted)). CarGuard argues that "there is no 'substantial likelihood' that CarGuard caused [Clough's] harm" because "[t]here is simply nothing linking [CarGuard] to the injury-producing conduct." (Mot. at 10.) CarGuard cites a declaration from its officer attesting that CarGuard "expressly banned [the telemarketing] calls" that Clough received from Highway Auto and "had no idea the calls occurred." (*Id.* at 9–10 [citing Smith Decl. ¶¶ 4–7].) Thus, Highway Auto's "independent action" is the source of Clough's injury, and such "harm that was entirely caused at the hands of a third party" does not satisfy the traceability requirement for Article III standing. (*Id.* at 10.)

"As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) (cleaned up). "Such an intertwining of jurisdiction and merits may occur when a party's right to recovery rests upon the interpretation of [federal law] that provides both the basis for the court's subject matter jurisdiction and the plaintiff's claim for relief." *Id.*[2]

---

[2] Jurisdictional dismissals may be appropriate where a plaintiff's claim "clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). But Carguard "ha[s] not argued that [Clough's] claim[] [is] 'immaterial,' 'made solely

An "intertwining" between the issues concerning jurisdiction and the merits exists here. "[T]he traceability requirement" for standing "is less demanding than proximate causation, and thus the 'causation chain does not fail solely because there are several links' or because a single third party's actions intervened." *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023) (citation omitted). "To [demonstrate] that the injury was 'not the result of the *independent* action of some third party,' the plaintiff must offer facts showing that [the defendant's] conduct 'is at least a substantial factor motivating the third parties' actions.'" *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). Meanwhile, "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016). An agency relationship exists when the third party acts with actual or apparent authority or when the defendant ratifies the conduct of the third party. *See Restatement (Third) of Agency* §§ 2.01, .03, 4.01 (Am. L. Inst. May 2023 Update); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019) (noting in TCPA action that courts "rely on the Restatement (Third) of Agency for common law agency principles"). The similarity of these standards means that "the question of [standing] is dependent on the resolution of factual issues going to the merits." *Safe Air*, 373 F.3d at 1040.

"[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery . . . ." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009); *see also Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (noting that when

---

for the purpose of obtaining federal jurisdiction,' or 'wholly insubstantial and frivolous.'" *Id.* (quoting *Bell*, 327 U.S. at 682–83).

questions on jurisdiction and merits are intertwined, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial"). Indeed, ruling any other way "would improperly allow a defendant to defeat jurisdiction by declaration," as "[t]he defendant could always defeat jurisdiction by simply declaring that" the defendant had no involvement in "the alleged violations." *Johnson v. Mantena LLC*, No. 5:19-cv-06468, 2020 WL 1531355, at *3 (N.D. Cal. Mar. 31, 2020) (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.")).

CarGuard also argues that the redressability element of standing is absent because "[t]he injury producing conduct is already over," "it was not CarGuard's conduct to begin with," and as a result, "there is nothing for CarGuard to redress." (Mot. at 12.) This argument misses the point. A charitable view of this argument is that it confuses traceability and redressability, but another view is that it confuses standing and the merits. In any event, "[t]o establish Article III redressability, [a] plaintiff[] must show that the relief [the plaintiff] seek[s] is both (1) substantially likely to redress [the] injuries; and (2) within the district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). Telemarketing communications in violation of the TCPA represent "'intrusive invasion[s] of privacy' and are a 'nuisance.'" *Van Patten v. Vertical Fitness Grp, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citation omitted). Such harm is alleged to have occurred in the past—the bailiwick of the damages remedy, which is sought here. *Cf. Viernes v. DNF Assocs., LLC*, 582 F.Supp.3d 738, 748 (D. Haw. 2022) ("As a general rule, compensatory damages satisfy the redressability requirement for purposes of standing.") And needless to say, damages are within the power of a court to award.

## V. CONCLUSION

For the foregoing reasons, CarGuard's motion is **DENIED**.

DATED:    May 23, 2023

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE